# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. ) | |
| JOSEPH MONTGOMERY (K-59651), ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 15 C 1923 |
| ) | |
| KIM BUTLER, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Very shortly after this Court issued its March 17 memorandum opinion and order ("Opinion") that briefly addressed the Petition for Writ of Habeas Corpus ("Petition") in which Joseph Montgomery ("Montgomery") has invoked 28 U.S.C. § 2254[1] to assert seven claimed constitutional-level grounds for relief from his state court conviction on which he is now serving an aggregate 75-year sentence, the staff of the Illinois Appellate Court for the First District graciously responded to an earlier request for delivery of a copy of that court's November 17, 2010 unpublished order (No. 1-08-3623) that had affirmed Montgomery's conviction and sentence on direct appeal. This Court's threshold review of that 28-page order (hereafter the "Illinois Appellate Opinion") quickly revealed that at a minimum what was said and done there would impact substantially on the responsive burden that had been imposed on Warden Kim Butler by the last sentence of the Opinion.

That initial impression has understandably prompted an in-depth review and analysis of the Illinois Appellate Opinion. And that review and analysis have in turn more than confirmed

_____

[1] All further references to Title 28's provisions will simply take the form "Section --," omitting the prefatory "28 U.S.C. §."

this Court's initial reaction, thus calling for this second opinion that explores Montgomery's seven purported grounds for relief at some length.

To begin with, it bears repeating that (as Montgomery's Petition Pt. ¶ 4(a) had stated) the only action taken by the Illinois Supreme Court on direct appeal was its January 26, 2011 order (reported in table at 293 Ill. 2d 575, 943 N. E. 2d 1105) to deny leave to appeal the Illinois Appellate Opinion. That being so, the Illinois Appellate Opinion is entitled to all of the consequences that attach to a final state court's treatment for Section 2254 purposes -- most particularly, the provisions of Section 2254(d) and (e) apply to the Illinois Appellate Opinion. That said, this opinion turns substantively to Montgomery's grounds for seeking habeas relief.

First, three of those seven grounds are based on one aspect of the conduct of voir dire proceedings during the jury selection that preceded Montgomery's trial: Ground One, which charges the trial judge with a failure to question prospective jurors properly; Ground Five, which asserts purported constitutionally ineffective representation by trial counsel in failing to object to the trial judge's asserted deficiency in that respect (both by a failure to object during the course of the voir dire proceedings and by failing to raise that issue in a post-trial motion); and Ground Seven, which charges Montgomery's appellate counsel with constitutionally inadequate representation in having failed to raise that issue on appeal. More than one-third of the pages in the Illinois Appellate Opinion are devoted to a fully detailed and thoughtful discussion of the voir dire subject, addressing both substantive and procedural issues on that score, but this Court can make far shorter shrift than that of those three grounds that Montgomery now advances.

Basically Montgomery complains that prospective jurors should have been asked both (1) whether they accepted and (2) whether they understood the fundamental guaranties that had been set forth in People v. Zehr, 103 Ill. 2d 472, 477, 469 N. E. 2d 1062, 1064 (1984). That

twofold requirement has been codified in Ill. S. Ct. Rule 431(b), which was amended in May 2007 to impose a judicial obligation to pose those questions sua sponte rather than (as had previously been the case) only at the defendant's request. And it is true that the trial court did not comply fully with that then recent amendment in Montgomery's trial that began in February 2008.

But Montgomery's fatal deficiency in that respect is that such failure did not violate his <u>federal</u> <u>constitutional</u> <u>rights</u>, as is essential to habeas relief under Section 2254(d). Any such constitutionally based claim is torpedoed by the fundamental principle accurately articulated in <u>People v. Glasper</u>, 234 Ill. 2d 173, 196, 917 N. E. 2d 401, 415-16 (2009) (citation omitted):

> Defendants do not have a right to Rule 431(b)(4) questioning under either the United States or the Illinois Constitution. A defendant's "right" to such questioning in Illinois courts is the product of the court's inherent power to make rules regulating the conduct of the circuit courts. While the rule is designed to help ensure that defendants are tried before a fair jury, we cannot say that Rule 431(b)(4) questioning is indispensable to a fair trial.

Just a bit earlier <u>Glasper</u>, <u>id.</u> at 193, 917 N. E. 2d at 413-14 had stated the identical proposition in even more succinct terms:

> The error in this case does not involve a fundamental right, or even a constitutional protection. The error involves a right made available only by rule of this court.[2]

<u>Glasper</u> and the Illinois Supreme Court's later opinion in <u>Thompson</u> (see n.2) were analyzed and discussed extensively at pages 9 through 14 of the Illinois Appellate Opinion. But what is of critical -- indeed, definitive -- importance here is not the correctness of the analysis there in state law terms, but rather its impeccable and totally accurate reflection of federal

---

[2] [Footnote by this Court] <u>Glasper</u> does not stand alone in the Illinois appellate world -- importantly, the Illinois Supreme Court has reconfirmed its holding in an extended discussion in <u>People v. Thompson</u>, 238 Ill. 2d 598, 609-11, 939 N. E. 2d 403, 411-12 (2010).

constitutional law. In sum, because it is an understatement to say that the voir dire issue falls totally short of meeting the standard of Section 2254(d), each of Montgomery's Grounds One, Five and Seven is rejected on the merits.

Montgomery's Ground Two, which complains of the trial court's denial of a continuance requested on the very day the trial was set to begin, fares no better. That issue was also dealt with by the Illinois Appellate Court on direct review, occupying pages 14 through 19 of its unpublished order. Once again the subject received thoughtful and thorough treatment there, with particular emphasis on the discretionary (and not at all constitutionally required) nature of the trial court's decision, that clearly posed no federal constitutional problem. Although such a denial of a last-minute motion for a continuance can under some circumstances constitute grist for the federal constitutional mill (see, e.g., Lee v. Kemna, 534 U.S. 362 (2002)), the sharply different circumstances in Montgomery's case as carefully described in the Illinois Appellate Opinion pose no such problem. So Ground Two is also rejected on the merits.

Next, Montgomery's Ground Three charges asserted improprieties in the Assistant State's Attorney's closing argument at trial, a subject that the Illinois Appellate Opinion also deals with at length at pages 19 through 25. As the careful discussion and analysis there plainly reflect, Montgomery's contention is based on evidentiary matters, as to which the Illinois Appellate Opinion permissibly found no error and also rejected a related contention that the relevant Illinois Pattern Jury Instruction did not cure the asserted (but rejected) claim of error. Nothing in Montgomery's claimed ground even approaches the level of constitutionally tainted holdings that qualify in Section 2254(d) form. Hence Ground Three is also rejected as a matter of law.

Ground Four calls for a different sort of treatment. Because it asserts that the trial counsel's representation of Montgomery violated the Constitution because counsel assertedly

"used threats, scare tactics and coercion to convince petitioner to waive his right to testify at trial," by definition that argument could not have been a subject presented in Montgomery's direct appeal, so that it was not of course a topic addressed by the Illinois Appellate Opinion. Instead Montgomery raised the issue in his pro se post-conviction petition, which was dismissed summarily at the Illinois Circuit Court level and was then considered and rejected by the Illinois Appellate Court on appeal in another unpublished order (No. 1-12-0584) issued on March 25, 2014.

There the Illinois Appellate Court, in another carefully reasoned (though necessarily shorter) review, resolved that claim against Montgomery -- this time in detailed factual terms, rather than being devoted heavily to the well-established legal standard for dealing with such a claim. It found that Montgomery's claim of threats and coercion on the part of his trial counsel was totally contradicted by the record and was hence factually frivolous -- made up out of whole cloth. That finding and holding call into play Section 2254(e)(1), which makes such a state court determination of a factual issue presumptively correct, with the applicant then "hav[ing] the burden of rebutting the presumption of correctness by clear and convincing evidence." It is once again an understatement to say that Montgomery has failed even to approach that standard, and thus Ground Four has failed as well.

Finally, Ground Six advances a last-ditch contention of Montgomery's asserted actual innocence of the crime of first degree murder, as to which the trial jury found him guilty beyond a reasonable doubt. In that respect he asserts:

> There exists evidence that Jarrod Johnson, a state witness, admitted he lied at trial and that petitioner did not kill the victim and a fundamental miscarriage of justice occurred.

But anyone who reads the Illinois Appellate Opinion must recognize Montgomery's contention as resting totally on the credibility of witnesses as well as the other evidence presented at trial. And on that score the meticulous presentation in the <u>Background</u> section of the Illinois Appellate Opinion, occupying pages 2 through 6 of that document, makes it clear that the jury could well have found (and very possibly did find) the evidence of Montgomery's guilt to be totally overwhelming[3] -- but this opinion need not speak in those terms. Instead it finds any claim of actual innocence to be insupportable, and it rejects Ground Six as well.

## **Conclusion**

In its March 17 Opinion this Court was careful to reserve judgment on Montgomery's substantive claims, based on what was before this Court at the time. But now it has had the benefit of receiving and analyzing both the Illinois Appellate Opinion and the same court's later opinion dealing with Montgomery's state court post-conviction petition, which together cast a totally different light on each of the seven grounds advanced by Montgomery's Petition -- and this Court has found every one of them wanting. As a result:

1. This Court dismisses the Petition on the merits, superseding its earlier suspension of judgment.

2. That renders moot any requirement for a response by counsel for Warden Kim Butler, as was ordered in the last sentence of the March 17 Opinion.

3. That earlier Opinion's denial of a stay is reconfirmed.

It is of course recognized that the discussion and holding as to the issue of limitations set out in the March 17 Opinion also applies to Montgomery's second post-conviction petition in the

---

[3] On that score Montgomery obviously prefers to ignore the fact that the jury did find him guilty beyond a reasonable doubt.

state court system, because Petition Pt. II ¶ 4 states that successive petition "is currently pending." As and when that post-conviction petition is finally resolved in the state court system, if Montgomery then wishes to file a new Section 2254 petition he will of course be required by Section 2244(3) to move in our Court of Appeals for an order authorizing this District Court to consider his Section 2254 application.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 19, 2015